UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| S.B., a minor, by his mother, H.S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. _____ |
| ) | |
| CITY OF SPRINGFIELD, MASSACHUSETTS, and ) | |
| SPRINGFIELD PUBLIC SCHOOLS, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

### I.    INTRODUCTION

1.    The City of Springfield ("City") and the Springfield Public Schools ("SPS") are denying the Plaintiff, S.B, equal educational opportunity and the opportunity to be educated with his peers without a disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*

2.    Instead of providing S.B. with the mental health services he needs to be successfully educated in a neighborhood school or other school attended by his peers without a disability ("neighborhood school"), Defendants have consigned him to the separate and inferior Public Day School.

3.    The Public Day School is not a therapeutic learning environment. Children in the Public Day School do not have the same opportunity to learn and to graduate that is afforded their peers without a disability in Springfield's neighborhood schools.

4.     The Public Day School is physically segregated from SPS's neighborhood schools. It is located on three campuses, and students placed in the Public Day School are afforded essentially no opportunity to interact with students in SPS's neighborhood schools. S.B. was placed in the Public Day School's middle school campus.

5.     S.B. could be educated with peers without disabilities in a neighborhood school, and have the same opportunity to progress academically and to graduate that is enjoyed by his peers without a disability, if Defendants provided S.B. the mental health services he needs while in school.

6.     The services S.B. needs could be provided in a neighborhood school and, indeed, are routinely provided in neighborhood schools in other large, urban school districts.

7.     Defendants' failure to provide S.B. such services violates the ADA.

## II.     JURISDICTION AND VENUE

8.     This court has jurisdiction over this action under Title II of the ADA, 42 U.S.C. §§ 12131-12133, and 28 U.S.C. § 1331. Declaratory relief is available pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. § 2202, and Rule 65 of the Federal Rules of Civil Procedure.

9.     Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2), since all of the acts and omissions giving rise to these claims occurred in the Commonwealth of Massachusetts. Venue is proper in the Western Division since the individual Plaintiff and all of the Defendants reside or are located in that Division. Local R. 40.1(D)(1)(a).

## III.     RELATED CASE

10.     This case is related to *S.S., et al. v. City of Springfield, et al.*, No. 14-CV-30116-MGM ("S.S. Matter"), pending in this District and Division.

2

11.     The Defendants in this case are Defendants in the S.S. Matter and S.B. is a constituent of the Parent/Professional Advocacy League, and the Disability Law Center, the two organizational plaintiffs in the S.S. Matter. S.B. is also a member of the class that S.S. seeks to represent in the S.S. Matter. *See* L.R. 40.1(G).

12.      In this case, S.B. relies on many of the same facts, and has asserted the same claims, as those put forth in the S.S. Matter. Both the instant case and the S.S. Matter "involve substantially the same questions of fact and law." *Id.*

## IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     Plaintiff S.B. has exhausted the administrative remedies available to him under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*

14.     S.B.'s parents rejected an Individualized Education Program ("IEP") that placed S.B. at the Public Day School.

15.     In response, SPS filed a Request for Hearing with the Bureau of Special Education Appeals ("BSEA") asking that S.B. be placed, involuntarily and despite his parents' objections, at the Public Day School.

16.     On October 12, 2016, S.B. and his parents filed a response to SPS's Request for Hearing and a counter claim for discrimination based on disability under Title II of the ADA.

17.     An administrative hearing before the BSEA was held on October 19 and 20, 2016, on an expedited basis.

18.     On November 9, 2016, the BSEA Hearing Officer issued a written ruling dismissing S.B.'s ADA claims for want of jurisdiction and finding in SPS's favor on the IEP and proposed placement at the Public Day School.

## V.    PARTIES

### A.    *Plaintiff*

19.    Plaintiff S.B. is a 13 year-old boy whom SPS has placed at the Public Day School. He resides with his mother, father, siblings, and other family members in Springfield, Massachusetts. His mother brings this action on his behalf.

20.    S.B. is a friendly boy with a good sense of humor. He enjoys roller skating, playing basketball, and socializing with his friends and siblings. S.B. enjoys helping others. He eagerly helps his parents with various chores around the family home. On weekends, he helps raise funds to help an ill child who lives in his neighborhood.

21.    S.B. has a disability within the meaning of the ADA. S.B. has been is diagnosed with, among other things, Attention Deficit Hyperactivity Disorder and a learning disability. These conditions substantially limit one or more major life activities, including developing and maintaining relationships.

22.    S.B. actively participates in outpatient mental health treatment. He takes prescribed psychiatric medication and participates in in-home mental health therapy.

23.    Nevertheless, as a result of his disability, he sometimes has behavior problems in school.

### B.    *Defendants*

24.    Defendant City of Springfield operates and funds SPS, including all public school programs, services, and activities. The City is a public entity as defined by Title II of the ADA. 42 U.S.C. § 12131. The City's offices are located at 36 Court Street, Springfield, MA 01103.

25.     Defendant Springfield Public Schools is a public entity as defined by Title II of the ADA. 42 U.S.C. § 12131. SPS's business offices are located at 1550 Main Street, Springfield, MA 01103.

## VI.     THE AMERICANS WITH DISABILITIES ACT

26.     Congress enacted the ADA, 42 U.S.C. § 12101 *et seq.*, to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities and to provide strong and consistent standards for identifying such discrimination. 42 U.S.C. § 12101(b)(1)&(2).

27.     The ADA is based on Congress's findings that, inter alia, (i) "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem," 42 U.S.C. § 12101(a)(2), and (ii) "individuals with disabilities continually encounter various forms of discrimination, . . . including relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

28.     In enacting the ADA, Congress also found that "discrimination against individuals with disabilities persists in such critical areas as . . . education." 42 U.S.C. § 12101(a)(3).

29.     Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 28 C.F.R. § 35.130.

DB3/ 201269712

30.     Title II of the ADA applies to all of the activities of public entities, including providing education. Each Defendant is a public entity subject to Title II of the ADA.

31.     The discrimination prohibited under Title II of the ADA includes the needless isolation or segregation of persons with disabilities. *Olmstead v. L.C.*, 527 U.S. 581, 600 (1999) ("unjustified institutional isolation of persons with disabilities is a form of discrimination"); *see also 2011 Statement of the US Department of Justice on Enforcement of the Integration Mandate of Title II of the ADA and Olmstead*, June 22, 2011 ("DOJ 2011 Statement").

32.     The ADA directs the Attorney General to promulgate regulations enforcing Title II of the ADA and provides guidance on their content. The regulations promulgated by the Attorney General require public entities to "make reasonable modifications" to their programs and services "when the modifications are necessary to avoid discrimination." 28 C.F.R. § 35.130(b)(7).

33.     The regulations also specify that it is unlawful discrimination for a public entity to:

      i.      "Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," 28 C.F.R. § 35.130(b)(1)(ii);

      ii.     "Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others," 28 C.F.R. § 35.130(b)(1)(iii);

      iii.    Fail to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities,"

6

28 C.F.R. § 35.130(d), which the Attorney General has defined as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible," 28 C.F.R. pt. 35, App. A, p. 450; or

iv.    "[U]tilize criteria or methods of administration . . . [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities," 28 C.F.R. § 35.130(b)(3)(ii).

34.    Congress specifically provided for a private right of action to enforce Title II. 42 U.S.C. § 12133 (incorporating the remedies and enforcement procedures available under Title VI of the Civil Rights Act, which includes a private right of action).

## VII.  ADDITIONAL FACTS

35.    Defendant SPS provides educational programs and services to approximately 25,000 children.

36.    SPS has identified approximately 650 of its students as having "emotional disturbance," a classification used by SPS to refer to students with a mental health condition that interferes with their education. Of these, many are placed at the Public Day School.

37.    S.B. has been identified by SPS as having "emotional disturbance."

38.    In other large, urban school districts, children with disabilities like S.B.'s are routinely educated in neighborhood schools, and in the same classrooms as their peers.

39.    S.B. could be educated in a neighborhood school with his non-disabled peers if SPS were to reasonably modify its programs and services to provide S.B. the mental health services he needs while in school.

7

40.     Because it would be a reasonable modification for Springfield to provide S.B. the mental health services he needs to be successfully educated with his peers without disabilities in a neighborhood school, the ADA prohibits Defendants from their unjustified segregation of S.B. in a separate school.

41.     Instead of providing S.B. with the mental health services he needs to be educated in a neighborhood school with his peers without disabilities, Defendants placed S.B. at the Public Day School, which is inferior to SPS's neighborhood schools and needlessly segregates its students from their peers without disabilities.

42.     The Public Day School is exclusively for students identified as having "emotional disturbance." It starts at kindergarten and extends through grade 12 (and up to age 21). S.B. is in sixth grade at the middle school campus of the Public Day School.

43.     The Public Day School does not provide the same opportunities to learn that are provided to students without a disability in the neighborhood schools. Academic instruction is far less rigorous and secondary to behavioral control based on the unwarranted assumption that children in the Public Day School are incapable of achieving academically at the same level as their peers without a disability.

44.     Children in the Public Day School have virtually no opportunity to engage in extracurricular activities. Students are denied access to nearly all extracurricular activities available in the neighborhood schools.

45.     The Public Day School does not use effective practices for managing and improving the behavior of its students.

8

46.     The Public Day School has not been effective in improving S.B.'s behavior in school. To the contrary, it has eroded his self-esteem and exacerbated his mental health symptoms.

47.     S.B. is now refusing to attend the Public Day School, including because of the harsh and punitive culture that prevails at the school.

## COUNT I

### VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

48.     Plaintiff re-alleges the allegations in all preceding paragraphs as though fully set forth herein.

49.     S.B. is an individual with a disability within the meaning of the ADA. His mental health condition substantially limits one or more major life activities, including developing and maintaining relationships.

50.     As a school-age child, S.B. is qualified to participate in Defendants' educational programs and services. 42 U.S.C. § 12131(2).

51.     Defendants the City and SPS are public entities within the meaning of the ADA. 42 U.S.C. § 12131(1).

52.     Through the acts and omissions described above Defendants are violating Title II of the ADA by:

   a.     Denying S.B. an opportunity to participate in and benefit from educational services that is equal to that afforded other students;

   b.     Denying S.B. educational services that are as effective in affording equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement as that provided other students;

c.     Denying S.B. the opportunity to receive educational programs and services in the most integrated setting appropriate to his needs;

d.     Failing to reasonably modify SPS's programs and services as needed to avoid discrimination against S.B; and

e.     Utilizing methods of administration that have the effect of defeating or substantially impairing the accomplishment of the objectives of Defendants' educational programs with respect to S.B.

53.     Granting relief to Plaintiff would not fundamentally alter Defendants' programs, services, and activities.

54.     The acts and omissions of Defendants have caused and will continue to cause S.B. to suffer irreparable harm, and he has no adequate remedy at law.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that the Court grant the following relief:

A.     Order and declare that Defendants are violating the rights of S.B. under Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, and its implementing regulations.

B.     Preliminarily and permanently enjoin Defendants, their successors in office, agents, employees and assigns, and all persons acting in concert with them to provide S.B. with the mental health services he needs to enjoy equal educational opportunity and receive educational programs and services in the most integrated setting, as required by Title II of the ADA.

C.     Award Plaintiff's attorneys' fees and costs as appropriate and permitted by law, including pursuant to 42 U.S.C. § 12205.

D.     Any other relief as this Court finds just and proper.

DB3/ 201269712

Dated:  February 6, 2017

*Of Counsel\**
Ira Burnim
Jennifer Mathis
**BAZELON CENTER FOR**
**MENTAL HEALTH LAW**
1101 15th Street, N.W., Suite 1212
Washington, D.C. 20005
(202) 467-5730
jenniferm@bazelon.org
irab@bazelon.org

*\*Pro hac vice application forthcoming*

Respectfully submitted,

**S.B., a minor, by his mother, H.S.,**

By their Attorneys,


   */s/ Elizabeth M. Bresnahan*
Robert E. McDonnell, BBO # 331470
Michael Blanchard, BBO # 636860
Jeff Goldman, BBO # 660870
Elizabeth M. Bresnahan, BBO # 672577
Matthew Bohenek, BBO # 684659
**MORGAN, LEWIS & BOCKIUS LLP**
1 Federal Street
Boston, MA 02110
(617) 951-8000
robert.mcdonnell@morganlewis.com
michael.blanchard@morganlewis.com
jeff.goldman@morganlewis.com
elizabeth.bresnahan@morganlewis.com
matthew.bohenek@morganlewis.com


Robert Fleischner, BBO # 171320
Deborah A. Dorfman, BBO # 625003
Sandra Staub, BBO #555544,
**CENTER FOR PUBLIC REPRESENTATION**
22 Green Street
Northampton, MA 01060
(413) 586-6024
rfleischner@cpr-ma.org
ddorfman@cpr-ma.org
sstaub@cpr-ma.org